**THIERMAN BUCK, LLP**
Mark R. Thierman, Nev. Bar No. 8285
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

*Attorneys for Plaintiff Lisa Walsh, on behalf of herself and others similarly situated*

**NIXON PEABODY LLP**
BRIAN V. ALCALA, *admitted pro hac vice*
BRITTANY BOGAERTS, *admitted pro hac vice*
70 West Madison Street, Suite 3500
Chicago, IL 60602
Tel. (312) 977-4400
bvalcala@nixonpeabody.com
bbogaerts@nixonpeabody.com

SETH NEULIGHT, *admitted pro hac vice*
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Tel. (415) 984-8377
sneulight@nixonpeabody.com

**DOTSON LAW**
Robert A. Dotson, Nev. Bar No. 5285
Jill I. Greiner, Nev. Bar No. 4276
One East First Street
City Hall Tower, 16th Floor
Reno, NV 89501
Telephone: (775) 501-9400
rdotson@dotsonlaw.legal
jgreiner@dotsonlaw.legal

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LISA WALSH, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ITS LOGISTICS, LLC and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:16-cv-00607-MMD-WGC<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

*Left margin (vertical text):* THIERMAN BUCK, LLP · 7287 Lakeside Drive · Reno, NV 89511 · (775) 284-1500 Fax (775) 703-5027 · Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

Plaintiff LISA WALSH, by and through her attorneys of record, and Defendants ITS LOGISTICS, LLC, by and through its counsels of record, ("Defendant" or "ITS") (collectively referred to throughout this Motion as "the Parties") hereby submit this Joint Motion for Preliminary Approval of Class and Collective Action Settlement. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP') and 29 U.S.C. §216 *et seq.* of the federal Fair Labor Standards Act ("FLSA"), the Parties seek this Court's preliminary approval of the Parties' "Joint Stipulation of Settlement and Request To Certify Class For Settlement Purposes Only" including Release ("Settlement"), a copy of which is submitted for this Court's review and attached as Exhibit A to the Declaration of Leah L. Jones. The Parties have also attached a [Proposed] Order to the Settlement as Exhibit 2.

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff is a former Customer Service Representative, who was employed by Defendant. Plaintiff alleges that she and other similarly situated employees of Defendant were not paid for the time it took them to boot up/log in to their computer systems, prior to that same computer tracking their time for pay purposes. Specifically, employees were required to boot up their computer and load numerous programs to be used during the workday, which involved logging in to a vmWare desktop program called "Thin Client" and once that function was complete, they could log in to the ADP timekeeping system.

Plaintiff filed her original complaint in the Second Judicial District Court of the State of Nevada in and for the County of Washoe on September 23, 2016. Plaintiff alleged various causes of action for unpaid wages on behalf of herself and all similarly situated individuals for failure to: (1) compensate for all hours worked in violation of 29 U.S.C. § 201, et seq.; (2) failure to pay overtime in violation of 29 U.S.C. § 207; (3) failure to compensate for all hours worked in violation of NRS 608.140 and 608.016; (4) failure to pay minimum wages in violation of the Nevada Constitution; (5) failure to pay overtime in violation of NRS 608.140 and 608.018; (6) failure to timely pay all wages due and owing in violation of NRS 608.140 and 608.020-050; (7) breach of contract; and (8) quantum meriut/unjust enrichment. (ECF No. 1-1.)

As a result of these allegations, Plaintiff seeks to recover unpaid wages, unpaid overtime

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

wages, attorney's fees, costs, interest and penalties for herself and the following class of individuals:

> "Class Member" means any current or former hourly-paid or non-exempt employee of ITS Logistics who used their computer as a timeclock and who was employed by ITS Logistics anywhere within the United States of America at any time during the period between September 23, 2013 and the date of Preliminary Approval of the Settlement by the Court. *See* Settlement at §1.4.

Defendants filed a Notice of Removal to this Court on October 20, 2016. (ECF No. 1.) Defendants filed their Motion to Dismiss Plaintiff's Third, Fourth, Fifth, Sixth, and Seventh causes of action, which was fully briefed as of November 28, 2016, but was not heard by the Court. (ECF Nos. 4, 8 and 11.)  Plaintiff filed her motion for Circulation of Notice pursuant to 29 U.S.C. § 216(b) which was fully briefed as of February 17, 2017, but was not heard by the Court.  (ECF No. 21, 24 and 29.)

The Parties requested a settlement conference with the Honorable Magistrate Judge Cobb, which was held on June 27, 2017.  The Parties engaged in serious discussions of the relative strengths and weaknesses of the claims, the costs of protracted litigation, and the total potential liability at issue in the case.  Ultimately, the Parties (both represented by counsel who have litigated numerous wage and hour collective and class actions) agreed to settle Plaintiff's claims for a quick and certain resolution that represents damages for each Class Member who is entitled to any alleged damages based on number of workweeks worked.  *See* Settlement at §8.1.

## II.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

The Parties' Settlement provides for considerable monetary recovery on behalf of the Class, releases only those claims alleged or related to the allegations in the complaint as described more fully below, and sets forth the legally appropriate mechanism for providing notice to the Class of the terms and conditions of the Settlement.  *See* Settlement, generally.

/ / /

/ / /

/ / /

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

## A.    The Recovery.

The Class consists of approximately 81 individuals. The Settlement provides for a Maximum Settlement Amount of $190,000.  *See* Settlement, at §1.1.  The $190,000 maximum settlement amount breaks down approximately as follows:

- $106,500 in estimated settlement funds to the Class;
- $5,000 in settlement administration costs;
- $10,000 enhancement award to Plaintiff for her participation in the lawsuit;
- $66,500 attorney's fees (35% percent of the maximum settlement amount); and
- $2,000 costs.

*Id.* at §1.10, §7.1; §9.1; §10.1 and §10.2.  All payments to the Settlement Class Members shall be deemed to constitute 30% wage compensation, 40% interest, and 30% statutory penalties payable by law directly to employees.  *Id.* §8.1.  The wage portion of the Settlement payments shall be subject to regular payroll deductions and withholding, and reported to applicable taxing authorities by means of W-2s.  *Id.* Settlement awards for Settlement Class Members (defined at §1.20 of the Settlement[1]) will be paid out of the Net Settlement Amount based on the formula described below.  Each Class Member who does not timely opt-out from of the Settlement (*see* Settlement at §6.3) is entitled to a proportionate amount based on the number of workweeks worked by the Class Member worked as compared with the total number of workweeks worked by the entire class.  *See* Settlement at §8.1.

This is a "checks cashed" Settlement. Payments to Settlement Class Members shall be sent by check and delivered by United States mail, first class, postage prepaid, to the Class Member's last known residence or mailing address.  *See* Settlement at §7.3.  In light of the mandatory "opt in" provisions of Section 216(b) of the FLSA, checks issued to Settlement Class Members shall contain a legend that they are in accord and satisfaction of all claims alleged, or that could have been alleged, in the Action, and shall be valid for 120 days. *Id.*  Only those amounts claimed by Class Members who timely endorse and cash their checks will be paid by out

---

[1] "Settlement Class" means all person who are Class Members who do not validly request exclusion (or "opt-out") from the Settlement in the manner provided by Settlement Agreement and the Notice of Proposed Settlement. *Id.* at §1.20.

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

of the Net Settlement Amount. *Id.* All remaining amounts shall remain the property of Defendant. *Id.*

### B.    The Release.

In consideration for the Settlement, members of the Settlement Class who do not file valid written requests for exclusion will release all claims relating to or arising out of the facts alleged in Plaintiff's complaint and that reasonably arise or could have arisen out of the facts alleged as to the class members. *See* Settlement at §5.1. Nothing in the Settlement releases any claims that cannot be released as a matter of law.

### C.    The Settlement Mechanism.

The Parties have agreed to use third-party Claims Administrator, Simpluris to administer the claims process. *Id.* at §1.3 and §7. The Settlement provides for the Claims Administrator to send out notice explaining the terms and conditions of the Settlement to approximately 81 class members.   *Id.* at §7.1.  (A copy of the Notice and Opt-Out Form) to be approved by the Court and sent to class members are attached as Exhibits 3 and 4 to the Settlement). Following mailing of the Notice, class members then have thirty (30) days to submit a dispute form, request to be excluded from the Settlement, or object to the Settlement. *Id.* at §6.1.

The Settlement further provides that following the Notice period the Court will hold a final fairness hearing to provide final review and approval of the Settlement. *Id.* at §1.9 and §12. The Notice advises class members about the fairness hearing and their opportunity to attend the hearing and make their views known. *See* Exhibit A at p. 11, §6.2.  At the fairness hearing, the Parties will address any issues raised by Class Members as a result of the Notice process. At that time, the Court will have a second opportunity to review the Settlement, this time in light of any such issues.

### III.    THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

FRCP 23(e) provides that settlement of the claims of a certified class is subject to the court's approval.  In general, settlement of class actions is favored as a matter of "strong judicial policy." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v.*

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

*City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)). Likewise, FLSA class action claims may be settled under the supervision of the Department of Labor or by court approval. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted); *see also Manual for Complex Litigation (Fourth)* § 21.632 (2004) *(*"Manual for Complex Litigation"*)* (summarizing "preliminary fairness review"). Stage two is the fairness hearing, set for a time after notice has been provided to the class and Class Members have had an opportunity to submit claims or objections to the proposed settlement or to opt out of it, and the court reaches a final determination about whether the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the dispute. *Alberto*, 252 F.R.D. at 659 (citations omitted).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53; *Id.* at 1353 (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946)); *see also Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008); *Jimenez v. JPMorgan Chase & Co.*, Case No. 08cv0152 W (WMc), 2008 U.S. Dist. LEXIS 72605, *2 (S.D. Cal. Sept. 23, 2008). Under the FLSA, when reviewing the fairness of the settlement, "a court must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute." *Jimenez,* 2008 U.S. Dist. LEXIS 72605 at *2; *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging a settlement of litigation.").

Because this is the first stage of the Court's evaluation of the Settlement, the Parties submit that, for purposes of this settlement only, (A) the Class should be certified, (B) the Settlement

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

should be preliminary deemed fair, reasonable, and adequate, and (C) notice should be sent out as set forth in the Settlement.

### A.   The Settlement Class Should Be Certified.

To facilitate the proposed settlement, Plaintiff respectfully requests that the Court conditionally certify the following Settlement Classes pursuant to the FLSA and FRCP 23:

- **Settlement Class:** any current or former hourly-paid or non-exempt employee of ITS Logistics who used their computer as a timeclock and who was employed by ITS Logistics anywhere within the United States of America at any time during the period between September 23, 2013 and the date of Preliminary Approval of the Settlement by the Court.

*See* Settlement at §1.4. The Parties agree that, for purposes of settlement, the criteria for certifying the Class under FRCP 23(a) and FRCP 23(b)(3) are satisfied in this case, and the proposed Class should be certified for purposes of settlement.  *See* Settlement, Jones Dec., at ¶ 7.

### 1.   All four criteria of FRCP 23(a) are met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at \*7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, the Settlement Class consists of approximately 81 individuals.  Plainly, the numerosity criterion is satisfied.  For purposes of approving this Settlement only, Defendant does not oppose Plaintiff's assertion that numerosity exists.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.***  The commonality requirement is construed liberally.  *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a)(2) construed "permissively"). The class members' claims must share some substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at \*8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

coupled with disparate legal remedies within the class" satisfies this criterion. *Hanlon,* 150 F.3d at 1019.

Here, all Class Members are non-exempt hourly paid employees who were required to boot up/log in to their computer system prior to that same system tracking their time for pay purposes. Under the FLSA all non-exempt employees are entitled to wages for all hours worked and are also entitled to overtime wages for all hours worked over forty (40) hours in a workweek. *See* 29 U.S.C. § 201 *et seq.* Under NRS 608.016 "An employer shall pay to the employee wages for each hour the employee works. Hours worked means any time the employer exercises "control or custody" over an employee. *See* NRS 608.011 (defining an "employer" as "every person having control or custody . . . of any employee."). Pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." NAC 608.115(1). NRS 608.020-.050 imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

Given this legal foundation, Plaintiff and Class Members' claims have common factual and legal questions, which include, whether Class Members were compensated for all hours they worked at the appropriate legal rate and whether Class Members who are former employees were paid all their wages due and owing at the time of their termination. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1062-63 (N.D. Cal. 2007); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602,607 (C.D. Cal. 2005). For purposes of approving this Settlement only, Defendant does not oppose Plaintiff's assertion that sufficient commonality exists.

***FRCP 23(a)(3): The claims or defenses of the representative parties are typical of the claims or defenses of the class.*** Like commonality, the typicality standard is applied "permissive[ly]." *See Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020). It is satisfied

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

if the representatives' claims are "'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Id.*  Here, the named Plaintiff is a former employee of Defendants who used a computer in completing her job duties and was required to boot up/log in to her computer system prior to that same computer tracking her time for pay purposes. Plaintiff alleges that all non-exempt hourly employees who used a computer in completing their daily job duties were required to first boot up/log in to their computer systems prior to that computer began tracking their time for pay purposes and, thus, Plaintiff's claim is typical of the claims of the Class.  For purposes of approving this Settlement only, Defendant does not oppose Plaintiff's assertion that sufficient typicality exists.

*FRCP 23(a)(4): The representative parties will fairly and adequately protect the interests of the class.*  Courts have interpreted this requirement as posing two questions: (1) whether either the named plaintiff or her counsel has any conflicts of interest with other class members, and (2) whether the named plaintiff and her counsel will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases).  Here, neither the named Plaintiff nor her counsel have interests antagonistic to those of other class members. To the contrary, the named Plaintiff shares with absent class members the same interest in recovering damages the alleged violations of Defendants' obligations under the FLSA and Nevada wage and hour laws. In addition, Plaintiff's counsel all have extensive experience in wage and hour class actions, as well as class action litigation more generally, and the proposed settlement was reached only after arm's-length direct settlement discussions facilitated by the Court.  Jones Dec., at ¶¶5-6, 11. Thus, the named Plaintiff and her counsel are adequate representatives of the Class.  For purposes of approving this Settlement only, Defendant does not oppose Plaintiff's assertion that Plaintiff and her counsel are adequate.

### 2.    The criteria of FRCP 23(b)(3) are met.

To certify a class under FRCP 23(b)(3), a court must find that common questions of fact or law predominate over questions affecting only individual members of the proposed class, and that a class action is the superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3).  Both criteria are met here.

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

***The predominance requirement is met.***   The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

The predominance requirement is readily met here because, as in numerous other class actions, Plaintiff's claim is based on an allegation that Defendant had a uniform policy of requiring the non-exempt employees who used a computer in carrying out their daily job duties to boot up/log in to their computers prior to that same computer tracking their time for pay purposes. Plaintiff's claim is based on factual and legal questions about Defendant's policy that are common to the Class. These aspects of the case strongly support a finding that the predominance requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d at 1068; *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).   Accordingly, for purposes of approving this Settlement only, Defendant does not oppose Plaintiff's assertion that common issues of law and fact predominate, satisfying the standard of FRCP23(b)(3).

***The superiority requirement is met.***   Determining whether a class action is the superior method of adjudicating a controversy involves "comparing alternative mechanisms of dispute resolution" as applied to the facts and claims. *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. at 614. The situation here is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure. In affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, the superiority requirement is "easily satisfied." *Id.* For purposes of approving this Settlement only, Defendant does not oppose Plaintiff's assertion that Rule 23(b)(3)'s superiority requirement is met here.

### B.    The Proposed Settlement Is Fair, Reasonable, and Adequate.

The *Manual for Complex Litigation* § 21.62 identifies several factors that courts may weigh in determining whether a settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)), summarizing the inquiry as follows: "Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Id.,* §21.62 at 315.

At the preliminary approval stage, courts do not make a final determination of fairness, reasonableness, and adequacy. Instead, the key question at this point is only whether the settlement is "potentially fair, as the Court will make a final determination of [the Settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377,386 (C.D. Cal. 2007). Thus, the inquiry should focus on whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937,944 (9th Cir. 2003); *see also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* §21.633 at 321.

/ / /

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**1.    The Settlement Is Fair.**

**Fairness of distribution among class members.**  The proposed settlement is fair to all members of the Settlement Class. The basis for recovery is the same for each class member, because it is based on the workweeks each individual worked. *See* Settlement at §8.  All members of the Settlement Class are eligible to receive payments from the Net Settlement Amount, as defined in the Settlement. *Id.* Finally, each member of the Settlement Class who participates in the Settlement will be bound by the same release provision as are all other class members.

**Fairness of proposed attorneys' fees.**  The allocation of total settlement funds between class members and the attorneys is also fair, in that the Settlement provides for Plaintiff's counsel to seek no more than 35% of the Maximum Settlement Amount in fees.  The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis.  Further, the fee request is in line with other attorneys' fees awards for similar actions, particularly given that the class members here will each be entitled to receive a substantial claim payment without alleging or having to prove any out-of-pocket losses. Indeed, courts have recognized that an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).   The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone."  *Id.*

Moreover, several courts have expressed frustration with the alternative "lodestar" approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records.  Commenting on the loadstar approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> This court is compelled to ask, "Is this process necessary?"  Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the *Lindy Kerr-Johnson* analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members.  They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition.  Or, class members may suffer a further diminution of their fund when a special master is

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

retained and paid from the fund.  Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

Indeed, the percentage approach is preferable to the lodestar because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources.  *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Courts now routinely uses the percentage of the common fund approach to determine the award of attorneys' fees.  (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

Class counsel's application for 35% of the Settlement Funds is within the range of reasonableness.  Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case.  *Newberg on Class Action* § 14:6 (4th ed. 2008); *see also In re Activision Securities Litigation*, 723 F.Supp. 1373, 1378 (N.D. Cal. 1989).  According to *Newberg*: "No general rule can be articulated on what is a reasonable percentage of a common fund.  Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *Newberg*, § 14:6[2].  Accordingly, the attorneys' fees sought in this case are fair and reasonable.

---

[2] *See also*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir.2000) (affirming award of fees equal to one-third of total recovery); *In re Public Ser. Co. of New Mexico*, 1992 WL 278452, at *1, *12 (S.D.Cal. July 28, 1992) (awarding one-third); *Antonopulos v. North American Thoroughbreds, Inc.*, 1991 WL 427893, at *1, *4 (S.D.Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *1, *10 (S.D.Cal. Aug.30, 1990) (awarding 30% attorneys' fee plus expenses). Moreover, courts in other districts have awarded attorney fees in amounts greater than 25% of the common fund. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 300 (1st Cir.1995) (approving a fee of roughly 30.9%); *Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, at *1, *24 (E.D.Pa. April 22, 2005) (awarding fee equal to 30% of a $65 million fund which represented a multiplier of 3.15 of the loadstar); *In re Raviscent Tech. Inc. Sec. Litig.*, 2005 WL 906361, at *1, *12 (E.D.Pa. April 18, 2005) (acknowledging that attorneys' fees of 30–35% were commonly granted in awarding 30% in fees of a $7 million fund); *In re Corel Corp. Sec.*

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

**Fairness of proposed "enhancement" award for the named Plaintiff**. The principle of fairness is also well served by the $10,000 enhancement payment proposed for the named Plaintiff, Ms. Walsh. Plaintiff provided invaluable assistance to Plaintiff's counsel in explaining the facts concerning Defendant's alleged boot up/log in violations. Further, Plaintiff incurred personal risk in bringing this lawsuit on behalf of the other persons in the class. *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (in wage and hour action where defendant prevailed at trial, named plaintiffs were held liable, jointly and severally, for defendant's attorneys' fees). Ms. Walsh could have been held liable for Defendant's costs if she were ultimately unsuccessful in resolving the case and his potential employment opportunities could (and can still be) impacted because of his public participation in this lawsuit. Such service payments are recognized as serving an important function in promoting class action settlements. In *League of Martin v. City of Milwaukee,* 588 F. Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff additional relief, explaining that it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit. *Id.* at 1024. Accordingly, the enhancement is fair.

### 2.    The Settlement Is Reasonable.

This is not a settlement where the aggregate settlement figure is large simply because the size of the class is so large. Instead, the size of the Settlement Class is relatively small, approximately 81 class members, but the overall settlement amount is substantial, $190,000. The proposed settlement is fair in that Class Members' benefits are determined by a precise accounting of the number of workweeks they worked during the class period. These considerations indicate that the proposed settlement falls within the range of reasonableness, warranting preliminary approval.

*Litig.*, 293 F.Supp.2d 484, 495–99) (E.D.Pa.2003) (awarding one-third of $7 million settlement fund plus expenses*); In re Combustion, Inc.*, 968 F.Supp. 1116, 1136–1141 (W.D.La.1997) (awarding fee equal to 36% of the settlement fund); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y.1992) (awarding fee of 30%); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005).

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

The conclusion that the Settlement is reasonable is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed; and the time, expense, and complexity of the litigation, including the possibility of appellate proceedings. Of particular relevance to the reasonableness of the proposed settlement is the fact that there are significant questions as to whether Plaintiff has a private right of action to recover alleged violations of the Nevada labor code and whether Defendant was liable to Class Members for so-called waiting time penalties under NRS 608.020-.050.  Indeed, the Court has not ruled on Defendant's Motion to Dismiss or Plaintiff's Motion for Conditional Certification. Given the significant legal uncertainty relating to the waiting time penalty issue, the $190,000 settlement for approximately 81 class members represents a significant recovery based on the alleged violations.

Furthermore, while Class Counsel believe that Plaintiff's claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months, even years.  *See* Jones Dec. at ¶9. Having reviewed relevant compensation data and employment information, counsel for the parties—all experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through Court facilitated arm's-length direct negotiation process, which continued into all details of the settlement agreement and ancillary documents. *Id.* at ¶6.

Another factor considered in approving a settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice,* 688 F.2d at 625.  The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial.  *See, e.g., Young v. Katz,* 447 F .2d 431,433-34 (5th Cir. 1971).  The policy that favors settlement of class actions and other complex cases applies with particular force here.  Employment cases, and specifically wage and hour cases, are expensive and time-consuming.  That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement.  Inevitably, the certification process alone would add time and expense to the litigation process.  The Settlement, on the other hand, provides to all Class

JOINT MOTION ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
4849-0918-7660.3

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

Members substantial relief, promptly and efficiently.  The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits."  *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted*); see also 4 Newberg on Class Actions* § 11.41 (citing cases).

In sum, the resulting settlement is, in light of all applicable factors, reasonable, and warrants notification of its terms to members of the potential class for their consideration and response.

### 3.    The Settlement Is Adequate.

The adequacy of a class action settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes.... Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice,* 688 F.2d at 634 (citation omitted).  Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  In addition, determining the adequacy of the settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* § 21.62. An additional consideration is that the settlement provides for payment to the class now, rather than a payment many years down the road, if ever.  *See City of Detroit v. Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the present value of the settlement sum, the probability of lengthy litigation in the absence of a settlement, and the risks that the class might not have prevailed at trial, it is no exaggeration to predict that without using the class action process, the relief that members of the class were likely to achieve ranged from negligible to zero.  Consequently, the $190,000 settlement satisfies the criterion of adequacy. *See Manual for Complex Litigation* § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

For all of these reasons, this Court should grant preliminary approval to the Settlement.

**THIERMAN BUCK, LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

**C.    The Notice and Claim Form Adequately Inform Class Members Of The Settlement and Their Rights Thereunder.**

A copy of the Parties' proposed class Notice is attached to the Stipulation of Settlement as Exhibit 1. Among other things, the Notice explains: the claims in the case and the essential terms of the settlement; the fact that to be included in the Settlement, the Class Member needs to do nothing; the procedures for requesting to be excluded from the settlement, and/or objecting to the settlement; and the consequences of each option available to the class member (doing nothing, opting out, or objecting). The Notice advises class members about the fairness hearing, their rights with respect to that hearing, and how to get more information.  The 30-day time period for opting out or objecting is reasonable, allowing class members to digest the information in the Notice and obtain answers to questions before deciding on the action they want to take.

Accordingly, the Parties respectfully asks that the Court approve the form of the proposed Class Notice and that the Court authorize the sending of the Notice and claim form to the members of the Settlement Class.

**IV.    CONCLUSION.**

For the reasons set forth above, the Parties jointly and respectfully requests that the Court enter the Proposed Order granting preliminary approval of the class action settlement that is filed concurrently herewith that:

1.    Certifies, for settlement purposes only, the Settlement Class pursuant to FRCP 23(a) and (b) (3)

2.    Preliminarily approves the proposed Settlement Agreement;

3.    Approves the proposed Notice;

4.    Directs the Notice of the proposed Settlement to be provided to the Settlement Class;

5.    Establishes a schedule for dissemination of the Notice of Proposed Class and Collective Action Settlement as well as the deadlines for the Settlement Class Members to dispute, opt-out or object to the Settlement;

6.   Approves and appoints the Named Plaintiff as a representative of the Settlement Class;

7.   Approves and appoints Named Plaintiff's counsel and Settlement Class Counsel;

8.   Approves and appoints Simpluris and the Claims Administrator; and

9.   Schedules a Final Fairness Hearing for Final Approval of the Settlement.

Date:  July 21, 2017                    THIERMAN BUCK LLP

                                        /s/ Leah L. Jones_____
                                        Mark R. Thierman (Nev. Bar No. 8285)
                                        Joshua D. Buck (Nev. Bar No. 12187)
                                        Leah L. Jones (Nev. Bar No. 13161)

                                        *Counsel for Plaintiffs*

Date:  July 21, 2017                    NIXON PEABODY LLP

                                        /s/ Brian V. Alcala
                                        Brian V. Alcala, *admitted pro hac vice*
                                        Brittany Bogaerts, *admitted pro hac vice*
                                        Seth Neulight, *admitted pro hac vice*

THIERMAN BUCK, LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com